529 So.2d 108 (1988)
STATE of Louisiana
v.
Paul SOLID.
No. KA-8664.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
*109 Before SCHOTT, BARRY and KLEES, JJ.
BARRY, Judge.
The defendant was indicted on two counts of distribution of heroin which were severed. His conviction on the first count and sentence to life imprisonment was affirmed in an unpublished opinion. (KA-4607, April 11, 1986). On the second count he was convicted of attempted distribution of heroin, La.R.S. 40:966 (14:27), and sentenced to fifty years at hard labor without benefit of parole, probation or suspension of sentence, to run concurrent with the life sentence.
The defendant assigns as error the trial court's refusal to allow his counsel to testify and the denial of parole eligibility on his sentence.

FACTS
On July 26, 1984 Officer Warner was part of an undercover operation working with a confidential informant. Detectives Weicks and Wethern were surveillance officers. Weicks testified he and Wethern told Warner to go to 8056 Gus St. and attempt to buy heroin from Danny Mitchell. The officers had information Mitchell was a known user and go-between with heroin dealers and buyers. Warner went to the address where the informant introduced him to Mitchell.
Warner testified that Mitchell directed him to several locations. They stopped briefly at St. Bernard and Villere Sts., but Mitchell did not score. They proceeded to St. Bernard and Milton St. and Mitchell went into the housing project but only found cocaine available. Mitchell told Warner to drive to the Desire project where Mitchell got out of the car and walked out of sight. He returned with the defendant who told Warner he had thirty dollar bags available.
Mitchell got into the car, got $120 from Warner to buy four bags, then told Warner to drive around the block and park in front of Champs Store, a known high crime and drug area. The defendant came out on the porch of Champs and then went inside with Mitchell. Mitchell exited alone, got into Warner's car and handed him two bags of what appeared to be heroin claiming that was all he got. Warner drove Mitchell home and turned over the evidence to Officer Wethern who turned it over to Officer Elder, their supervisor. Elder turned over the two foil packets (with Weicks' initials) to Officer O'Neal.
During a roundup after the undercover operation, Officer Warner pointed out the defendant and also identified him in court. Officers Weicks and Wethern similarly testified about the undercover operation and the defendant's involvement.
Mitchell testified for the State pursuant to an agreement to plead guilty to the lesser crime of possession of heroin. He said Warner picked him up and he tried to make several connections. Mitchell said he looked for a seller in a bar and then saw the defendant as he walked down the street at Law and Gallier Streets. According to Mitchell, the defendant went to the parked car, asked if they were "looking", and set $120 for four bags of heroin. Mitchell gave the defendant Warner's money and the defendant handed him four bags, but he admitted keeping two bags for scoring. Mitchell said he gave the heroin to the informant for Warner.
Officer O'Neal, an expert in the field of analysis and identification of controlled dangerous substances, testified that the powder in the tinfoil packets was heroin.

REFUSAL TO ALLOW DEFENSE COUNSEL TO TESTIFY
James Welch, defense counsel, asked for a bench conference prior to cross-examination of Mitchell. Welch then questioned Mitchell about his statements made at arraignment on June 18, 1985 when Welch represented Mitchell and the defendant. The State objected on the grounds of attorney/client privilege, but was overruled. After Welch laid a foundation to impeach he asked Mitchell whether he had previously stated (at arraignment) that he never had any drug dealings with the defendant. *110 Mitchell denied the statement. A bench conference followed.
On redirect Mitchell said he told his present attorney, Calvin Johnson, the same version that he told the jury. Johnson took the stand and confirmed that Mitchell's testimony was consistent with what Mitchell told him about the drug transaction.
Near the end of trial, out of the jury's presence, Welch moved for a mistrial because he felt that he needed to testify in order to impeach Mitchell, but decided he could not testify because he was the defendant's attorney. The State contended Welch could have discovered that Mitchell would testify. Welch responded that it was mentioned as a possibility several days prior to trial. The State continued to rely on the attorney-client privilege.
The trial judge noted that during the two weeks prior to trial the State and Welch became aware that Mitchell might testify for the State. The trial judge stated he was not aware of a potential conflict as to Welch until just prior to Mitchell's testimony. The court had to consider Welch's attorney-client privilege as well as Welch's duty to effectively represent the defendant. The judge said the privilege would not be honored if the testimony could be beneficial to the defendant. Therefore, the court allowed Welch to question Mitchell regarding any inconsistent statement Mitchell had made to him. Mitchell testified he did not recall making the inconsistent statement.
Since the purpose of showing a prior inconsistent statement was to impeach Mitchell's credibility and not for the truthfulness of the statement, the judge felt the effect was cumulative. The judge noted that the jury instructions would include legal reasons to justify disregarding Mitchell's testimony. The court denied the motion for mistrial and Welch's objection to Johnson's testimony was overruled.
Mitchell's testimony was used to corroborate that of Officer Warner whose testimony, standing alone, was sufficient to convict. The surveillance officers confirmed the defendant's activities. Mitchell's testimony was cumulative. Johnson's statements to bolster it and Welch's attempts to impeach Mitchell were not crucial to the State's case. The fact that Welch did not testify did not substantially affect the jury verdict. La.C.Cr.P. Art. 921. See generally State v. Miller, 391 So.2d 1159 (La.1980).
We find no merit in this assignment.

ILLEGAL SENTENCE
The defendant correctly argues that a sentence under La.R.S. 40:966 should not deny parole eligibility. The illegal sentence can be corrected under La.C.Cr.P. Art. 882.
The defendant's conviction is affirmed. His sentence is amended to delete the prohibition against parole. Parole eligibility will be determined by the Department of Corrections in accordance with La.R.S. 15:574.4. The sentence as amended is affirmed.
AMENDED AND AFFIRMED.